UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___11/3/2020___
```

| | |
|---|---|
| Anthony Drayton et al., | |
| Plaintiffs, | **1:18-cv-10138 (ALC) (SDA)** |
| -against- | |
| The City of New York et al., | <u>**OPINION AND ORDER**</u> |
| Defendants. | |

**STEWART D. AARON, United States Magistrate Judge:**

Plaintiffs Anthony Drayton ("Drayton"), Robert Lewis ("Lewis") and Santos Seda ("Seda") (collectively, "Plaintiffs") bring this action individually, and on behalf of all others similarly situated, against Defendants the City of New York and the New York City Department of Education ("Defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Plaintiffs allege that the Defendants engaged in a pattern and practice of failing to pay them and putative class members all of their earned overtime wages. (*See* Am. Compl., ECF No. 84, ¶¶ 1, 23, 34.)

Presently before the Court is Plaintiffs' motion to conditionally certify a FLSA collective and permitting court-supervised notification to putative collective members. (*See* Not. of Mot., ECF No. 115.) For the reasons set forth below, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

Plaintiffs make the following allegations:[1]

Drayton has been employed by the City of New York Department of Parks and Recreation ("DPR") since July 2006. (Drayton Decl., ECF No. 116-1, ¶ 2.) In addition to receiving a base hourly pay rate, Drayton also received wage differential payments, including a night shift differential, a weekend differential and a driving differential. (*See id*. ¶ 5.) However, his differentials were not included as part of his overtime rate. (*See id*. ¶¶ 6-7.)

For example, for the check issued on June 17, 2016, Drayton received $1,806.19 for 80 hours of regular time and $50.88 for 1.5 hours of overtime. (Am. Compl. ¶ 40.) This equated to a regular rate of pay of $22.58 per hour and an overtime rate of approximately $33.92 per hour. (*Id*.) Drayton also was paid an additional $183.72 for "daily assignment differentials" for that pay period. (*Id*. ¶ 41.) These $183.72 in differential payments, when divided by the 81.5 hours worked by Drayton during the pay period, constituted a payment of $2.25 per hour worked during the pay period, which would increase his regular rate of pay from $22.57 per hour to $24.82 per hour (*Id*. ¶ 42.) Thus, according to Plaintiffs, Drayton's overtime rate of pay should have been 1.5 times this $24.82 per hour rate, or $37.23, instead of the $33.92 rate he actually received for one and a half hours of overtime. (*Id*.)

---

[1] At the conditional certification stage, courts "should not weigh the merits of the underlying claims," *Hamadou v. Hess Corp*., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) (citing *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)), and should not "resolve factual disputes, decide substantial issues going to the ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P*., Case 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (internal quotation marks omitted). Accordingly, for the purposes of resolving the collective certification motion, I treat the facts alleged by Plaintiffs as true. *See Cortes v. New Creators, Inc*., Case No. 15-CV-05680 (PAE), 2015 WL 7076009, at *1 n.1 (S.D.N.Y. Nov. 12, 2015).

Lewis was employed by the DPR from March 2007 through August 2018. (Lewis Decl., ECF No. 116-2, ¶ 2.) In addition to receiving a base hourly pay rate, Lewis also received wage differential payments, including a night shift differential and a driving differential. (*See id*. ¶ 5.) However, his differentials were not included as part of his overtime rate. (*See id*. ¶¶ 6-7.)

For example, for the check issued on June 17, 2016, Lewis received $1,806.19 for 80 hours of regular time and $898.92 for 26.5 hours of overtime. (Am. Co ¶ 46.) This equated to a regular rate of pay of $22.58 per hour and an overtime rate of $33.92 per hour. (*Id*.) Lewis also was paid $68.60 in "daily assignment differentials," along with $4.52 in "hourly night shift differentials," for a total of $73.12 in differentials for that pay period. (*Id*. ¶ 47.) According to Plaintiffs, for the 106.5 hours worked by Lewis reflected on the paycheck issued on June 17, 2016, his regular rate of pay, inclusive of differentials, should have been $23.27 per hour, and his overtime rate should have been $34.91 per hour. (*Id*.) Thus, Plaintiffs contend that, for the 26.5 hours of overtime reflected on that paycheck, Lewis should have received $925.12 in overtime payments, rather than the $898.92 he actually received, and that he is owed $26.20 in underpayment of overtime for that pay period. (*See id*.)

At the time of the filing of the Amended Complaint, Seda had been employed by the City Department of Education since approximately October 1989. (*See* Seda Decl., ECF No. 116-4, ¶ 2; Am. Compl. ¶ 11.) In addition to receiving a base hourly pay rate, Seda also received wage differential payments, including a night shift differential, an assignment differential and a longevity differential. (Seda Decl. ¶ 7.) However, his differentials were not included as part of his overtime rate. (*See id*. ¶ 9.)

For example, for the check issued on December 2, 2016, Seda received $1,790.85 for 80 hours of regular time and $753.11 for 22.25 hours of overtime. (Am. Compl. ¶ 51.) This equated to a regular rate of pay of $22.38 per hour and an overtime rate of approximately $33.57 per hour. (*Id*.) Seda also was paid $42.21 for "hourly assignment differential" and an additional $176.76 for a "shift assignment differential" for that pay period. (*Id*. ¶ 52.) These $218.97 in differential payments, when divided by the 102.25 hours worked by Seda during the pay period, constituted a payment of $2.14 per hour worked during the pay period, which would increase Seda's regular rate of pay from $22.38 per hour to $24.52 per hour. (*Id*. ¶ 53.) According to Plaintiffs, Seda's overtime rate of pay should have been 1.5 times this $24.52 per hour rate, or $36.78, instead of the $33.57 rate he actually received for one and a half hours of overtime. (*Id*.). Thus, Plaintiffs contend that, for the check issued on December 2, 2016, Seda is owed an additional $3.21 per overtime hour, or $71.42. (*Id*.)

Over 1,000 individuals have opted in to this action to date and 11 Opt-In Plaintiffs submitted declarations in support of Plaintiffs' motion stating that they were subject to the same unlawful compensation policies and practices by Defendants. (*See* Consents, ECF Nos. 17-29, 30-65, 68, 75, 77, 79-80, 99, 101, 123; Decls., ECF Nos. 116-6 & 116-7.)

For their side, Defendants contend that "Plaintiffs have not met their burden in showing that they are similarly situated to the collective action members they seek to represent." (Opp. Mem., ECF No. 122, at 1.) They also contend that Plaintiffs are not entitled to equitable tolling and that Plaintiffs' proposed notice is defective in certain respects. (*See id*. at 12-15.)

**DISCUSSION**

I.   **Collective Certification**

    A.  **Legal Standards**

The FLSA provides that "any one or more employees" may bring an action against an employer "for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become a party to such an action, an employee must file written consent in the court in which the action is brought. *Id.* "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

The Second Circuit has approved a two-step method for the exercise of the Court's discretion. *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 560 (S.D.N.Y. 2015) (citing *Myers*, 624 F.3d at 554). First, in the step known as "conditional certification," if the named plaintiffs make a "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law,'" the trial court may make an initial determination to send notice to potential opt-in plaintiffs. *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). At the second stage, which typically occurs after discovery is complete, the court determines whether the opt-ins are in fact "similarly situated" to the named plaintiffs; if the record reveals that they are not, the court may "de-certify" the collective action and dismiss those plaintiffs' claims without prejudice. *Myers*, 624 F.3d at 555 (citations omitted).

During the initial conditional certification stage, the requirement of a "modest factual showing" cannot be satisfied solely by "unsupported assertions." *Myers*, 624 F.3d at 555. However, because the purpose of this first stage is "merely to determine *whether* 'similarly situated plaintiffs do in fact exist," plaintiffs have a low burden of proof. *Id.* (emphasis in original) (citing *Hoffmann*, 982 F. Supp. at 261). Documents properly considered on a conditional certification motion "include plaintiffs' 'own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-58 (S.D.N.Y. 2013) (quoting *Hamadou*, 915 F. Supp. 2d at 661).

To determine whether members of a collective are similarly situated, "district courts typically review several factors, including (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 367 (S.D.N.Y. 2014). "Plaintiffs need not present evidence for each and every opt-in Plaintiff so long as they can show that Defendants engaged in a policy, plan, or scheme of FLSA violations." *Lynch v. City of New York*, No. 16-CV-05677 (KBF), 2017 WL 4877425, at *3 (S.D.N.Y. Oct. 27, 2017) (internal citation and quotation marks omitted).

**B.  Application**

Plaintiffs define their putative collective as follows:

> All individuals who opted-in to this action prior to November 4, 2019, as well as all other current and former employees who worked for the New York City Department of Parks and Recreation or Department of Transportation, were classified as non-exempt employees, who worked overtime and received any type of differential payment at any time from October of 2015 to the present.

(Pls.' Mem., ECF No. 117, at 2-3.)

As set forth above, over 1,000 individuals already have opted in to this case and no notice need be distributed to them. Thus, Plaintiffs seek an order requiring Defendants to provide them with a mailing list and authorizing Plaintiffs to send notice to the individuals in the proposed putative collective who have not yet filed an opt-in form, as follows:

> All current and former employees who worked for the New York City Department of Parks and Recreation or Department of Transportation, were classified as non-exempt employees, who worked overtime and received any type of differential payment at any time from October of 2015 to the present.

(Pls.' Mem. at 3.)

The Court finds that Plaintiffs have made their modest showing that the employees in the putative collective were subject to the same policies with respect to wage differentials and overtime. Defendants argue that the job titles and responsibilities of the representative Plaintiffs differ from those of the putative collective, such that they are not similarly situated. (*See* Opp. Mem. at 5-7.) However, Defendants have not shown how the employment settings of the representative Plaintiffs differ from those in the putative collective with respect to the policy at issue. *See Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009) ("The similarly situated analysis, then, centers upon the features which make the particular policy or practice unlawful."); *see also Alonso v. Uncle Jack's Steakhouse, Inc.*, No. 08-CV-07813 (DAB), 2011 WL 4389636, at *3 (S.D.N.Y. Sept. 21, 2011) ("While the extent, existence, and lawfulness of these company-wide policies are issues for the finder of fact at trial, they are issues that are subject to generalized proof. Those issues outweigh Defendants' concerns about Plaintiffs' varying job titles, locations, and work schedules."). Accordingly, the Court finds that conditional certification is appropriate.

## II.   Equitable Tolling

### A.   Legal Standards

The FLSA has a two-year state of limitations "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). The statute of limitations for each putative collective action member, including the representative plaintiff, continues to run until he or she files written consent with the court to join the lawsuit. *See id.*; 29 U.S.C. § 256(b); *Hoffmann,* 982 F. Supp. at 260 ("[O]nly by 'opting in' will the statute of limitations period on potential plaintiffs' claims be tolled."). Courts have the power to equitably toll the statute of limitations "as a matter of fairness where a [party] has been prevented in some extraordinary way from exercising his rights." *Iavorski v. United States I.N.S.,* 232 F.3d 124, 129 (2d Cir. 2000) (internal citations omitted). However, equitable tolling is only to be applied "in rare and exceptional circumstances." *Zerilli-Edelglass v. New York City Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003) (internal citations omitted).

"An extraordinary circumstance might exist if the employee shows that it would have been impossible for a reasonably prudent person to learn of the cause of action or if the defendant concealed from the plaintiff the existence of the cause of action." *Whitehorn v. Wolfgang's Steakhouse, Inc.,* 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) (citations omitted). "[B]ecause equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to an earlier date, such as 'the date of the motion to certify.'" *Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 283 (S.D.N.Y. 2019) (citations omitted); *see also Garcia Ramos v. DNC Food Serv. Corp.*, No. 19-CV-02967 (VSB), 2020 WL 2832776, at *9 (S.D.N.Y.

June 1, 2020) (delay caused by time required for court to rule on motion for collective certification may be deemed extraordinary circumstance for purposes of equitable tolling).

**B.  Application**

Here, it cannot be determined at this time whether equitable tolling will apply to any future plaintiff who hereafter files a consent to opt in. Thus, the Court finds that it is appropriate for Plaintiffs to include in their notice all potential members of the collective employed by Defendants since September 11, 2017, three years before Plaintiffs' motion to certify was filed, with the understanding that Defendants may challenge the timeliness of individual Plaintiffs' claims in the future. *See Pettenato*, 2019 WL 5587335, at *12; *see also Mogollan v. La Abundancia Bakery & Rest. Inc.*, No. 18-CV-03202 (GBD) (SDA), 2019 WL 5693375, at *7 (S.D.N.Y. Nov. 4, 2019).

**III.  Form Of Notice**

**A.  Legal Standards**

"Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains broad discretion over the form and content of the notice." *Hernandez v. City of New York*, No. 16-CV-03445 (RA), 2017 WL 2829816, at *6 (S.D.N.Y. June 29, 2017) (quoting *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 612 (S.D.N.Y. 2016)). "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions and ensure that putative plaintiffs receive accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id*. (quoting *Bittencourt v. Ferrara Bakery & Cafe Inc*., 310 F.R.D. 106, 116 (S.D.N.Y. 2015)).

**B.  Application**

Defendants seek to make three alterations to Plaintiffs' form of notice (Opp. Mem. at 13-

15), which are discussed in turn. First, Defendants assert that Plaintiffs' definition of the collective

is overbroad. In their Notice, for example, Plaintiffs include "All current and former employees

who worked for the New York City Department of Parks and Recreation or Department of

Transportation." (*See* Pls.' Proposed Notice, ECF No. 116-9.) Defendants request that the

collective definition be narrowed to read as follows:

> All current and former employees who worked for the New York City Department
> of Parks and Recreation as a Park Supervisor Level I or Associate Parks Service
> Worker or at the New York City Department of Transportation as an Assistant City
> Highway Repairer, were classified as non-exempt employees, who worked
> overtime and received any type of differential payment at anytime from [three
> years back from the date of the notice] to the present.

(Opp. Mem. at 14.) Defendants' request is based on the flawed premise, discussed above, that

employees with different job titles are not similarly situated. Defendants' request thus is denied.

Thus, the Court finds that the notice shall be addressed to:

> All current and former employees who worked for the New York City Department
> of Parks and Recreation or Department of Transportation and were classified as
> non-exempt employees, who worked overtime and received any type of
> differential payment at any time from September 11, 2017 to the present.

Second, Defendants seek to add language about their future litigation tactics. The third

bullet point in Plaintiffs' proposed form of notice states: "Defendants vigorously deny any

wrongdoing and/or liability and deny that any employee was underpaid for his or her work at any

time." (Pls.' Proposed Notice at 1.) Defendants seek to add the following sentence to this bullet

point: "Defendants plan to request that the Court decertify the collective action as soon as

possible and/or dismiss the lawsuit, as they have the right to do." (Opp. Mem. at 14.) The Court,

in its discretion, denies this request. This sentence is an unnecessary recitation of Defendants'
litigation tactics and serves no purpose vis-à-vis notice to the putative members of the collective,
other than perhaps to seek to discourage them from opting into this case (which is an improper
purpose).

Third, Defendants object to the inclusion of the following sentence in the notice: "If you
believe that you have been penalized, discriminated against, or disciplined in any way as a result
of your receiving this notification, considering whether to join this lawsuit, or actually joining this
lawsuit, you may contact Plaintiffs' lawyers or any other lawyers of your choosing." (Opp. Mem.
at 15.) Although they expressly defend other language of their proposed notice in their Reply,
Plaintiffs do not defend this language in their Reply. (*See* Pls.' Reply, ECF No. 125, at 12-13.) The
Court finds, in its discretion, that this language is not necessary—given the prior sentence which
states that "[i]t is a violation of state and federal law for the City of New York or the New York
City Department of Education to fire, discipline, or in any manner discriminate or retaliate against
you for taking part in this lawsuit." (*See* Pls.' Notice at 3.) Thus, the sentence to which Defendants
object shall be removed. *See Cohan v. Columbia Sussex Mgmt., LLC*, No. 12- CV-03203 (JS) (AKT),
2013 WL 8367807, at *13 (E.D.N.Y. Sept. 19, 2013) (ordering deletion of similar language).

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion is GRANTED IN PART and DENIED IN
PART. To the extent not previously done, the parties forthwith shall meet and confer regarding
the method(s) of dissemination of the Notice of Lawsuit.  Within seven days of the date of this
Order, Plaintiffs shall submit for final approval (a) a revised version of their proposed Notice of

Lawsuit, and (2) the parties' joint proposal regarding the method(s) of dissemination (or, if the parties are unable to agree, the parties' respective proposals).

**SO ORDERED.**

DATED:        New York, New York
              November 3, 2020

_____
STEWART D. AARON
United States Magistrate Judge